## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| ASR-8 CENTRE LP, *et al.*[1] | § | Case No. 14-30174 |
| | § | |
| DEBTORS. | § | (*Joint Administration Requested*) |

---

## DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO BANKRUPTCY CODE § 363(C); (II) GRANTING ADEQUATE PROTECTION PURSUANT TO §§ 363(C) AND 361; AND (III) SETTING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

THE DEBTORS HAVE REQUESTED THAT THIS MOTION BE CONSIDERED AT THE DEBTORS' FIRST DAY HEARINGS.

---

[1] The Debtors in these chapter 11 cases are: (1) ASR-8 Centre LP; (2) ASR-Parkway One & Two, LP; and (3) ASR-Fountainview Place LP.

The above-captioned debtors and debtors in possession (the "Debtors"), by and through its undersigned proposed attorneys, hereby file this motion (the "Motion") for an interim and final order (i) Authorizing the Use of Cash Collateral Pursuant to Bankruptcy Code § 363(c); (ii) Granting Adequate Protection Pursuant to Bankruptcy Code §§ 363(c) and 361; and (iii) Setting Final Hearing Pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  In support of the relief requested in the Motion, the Debtors respectfully represent as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## II.  BACKGROUND

2.      On January 6, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession.  No trustee or examiner has been appointed in these cases.

**B.      The Debtors' Businesses**

3.      The Debtors are primarily engaged in the business of owning and operating commercial office/retail space located in Houston, Texas (the "Properties").  The Properties consist of four different office buildings: (i) 800 Sam Houston Parkway; (ii) 888 Sam Houston Parkway; (iii) Fountainview Office Park; and (iv) Northwest Spectrum Plaza.  The Debtors own

the Properties and the Properties are operated and managed by an affiliate entity, American Spectrum Management Group, Inc.

**C.     Noteholders**

4.     NW Spectrum VPL, LLC ("NW Spectrum Noteholder") is the primary secured creditor with respect to ASR-8 Centre LP pursuant to a Promissory Note in the original principal amount of $4,500,000.00 dated March 29, 2013 secured by a Deed of Trust, as amended and assigned from time to time.  Parkway I & II VPL, LLC ("Parkway I & II Noteholder") is the primary secured creditor with respect to ASR-Parkway One & Two LP pursuant to a Promissory Note in the original principal amount of $5,000,000.00 dated December 29, 2005 secured by a Deed of Trust, as amended and assigned from time to time.   Fountain View VPL, LLV ("Fountain View Noteholder") is the primary secured creditor with respect to ASR-Fountainview Place LP pursuant to a Promissory Note in the original principal amount of $12,750,000.00 dated April 29, 2008 secured by a first priority lien under the corresponding Deed of Trust, as amended and assigned from time to time.   Collectively, NW Spectrum Noteholder, Parkway I & II Noteholder, and Fountain View Noteholder shall be referred to herein as Senior Noteholders.  In addition, ViewPoint Bank N.A. ("VPB") is the secondary secured creditor with respect to ASR-Fountainview Place LP pursuant to a Promissory Note in the original principal amount of $1,700,000.00 dated April 29, 2008 and secured by a second priority lien under the corresponding Deed of Trust, as amended and assigned from time to time.  Collectively, the Senior Noteholders and VPB shall be referred to herein as the Noteholders.

5.     The Debtors originally made the Promissory Notes in favor of VPB and, upon information and belief, VPM assigned the loan documents to the Senior Noteholders on or around September 30, 2013.  Upon acquiring the Promissory notes, the Senior Noteholders

immediately initiated foreclosure proceedings, leaving no time for out of court restructuring discussions and making any out of court restructuring negotiations unattainable.

6.      On December 2, 2013, the Noteholders provided notice to the Debtors of an impending foreclosure sale with respect to the Properties that was scheduled to take place on January 7, 2014.  The Debtors filed these cases on January 6, 2014 to prevent the foreclosure sale, protect the equity in the Properties, and preserve the Debtors' business operations for the benefit of its other creditors, employees, and other equity interest holders.

7.      The Noteholders assert that all cash and cash equivalents of the Debtors' bankruptcy estates in existence on the Petition Date and that is acquired by the Debtors thereafter constitutes cash collateral (the "Cash Collateral") within the meaning of section 363(a) of the Bankruptcy Code.

### III.  REQUEST FOR TEMPORARY AND FINAL USE OF CASH COLLATERAL

8.      The Debtors require the use of Cash Collateral in order to continue their ordinary course business operations and to maintain the value of their bankruptcy estates.  The Debtors will not be able to meet their ongoing post-petition obligations unless they are permitted to use the Cash Collateral.

9.      The Debtors require immediate authority from the Court to use the Cash Collateral in the ordinary course of business for the operations of the Properties during the period from the Petition Date through January 31, 2014 (the "Interim Period") pending a final hearing on this Motion, pursuant to the budget attached hereto as **Exhibit A** (the "Interim Budget").

10.     Pursuant to the Interim Budget, the Debtors request the authority to use up to $233,512.34 of the Cash Collateral during the Interim Period before entry of a final order to operate the Properties in the ordinary course.  The Debtors intend to use the Cash Collateral to

fund business operations and maintenance and otherwise preserve the value of the Debtors' businesses and Properties.

11.     The Debtors request the continued authority to use the Cash Collateral beyond the Interim Period in order to continue their business operations, preserve their going concern value, and confirm a plan of reorganization.  A final budget will be submitted to the Court prior to the final hearing on this Motion.

12.     Pursuant to § 363(c)(2) of the Bankruptcy Code, the Debtors may not use, sell or lease the Cash Collateral without the Court's authority or the Noteholders' consent. Section 363(e) of the Bankruptcy Code allows the Court to grant this authority upon the provision of adequate protection to the Noteholders.

13.     Pursuant to § 361(2) of the Bankruptcy Code, the Debtors propose to adequately protect the Noteholders by granting replacement liens on the assets with respect to which the Noteholders have validly perfected liens as of the Petition Date.  The replacement liens offered to the Noteholders as adequate protection will have the same validity and priority as the liens held by the Noteholders as of the Petition Date.   In addition, the Noteholders are further adequately protected by § 507(b) of the Bankruptcy Code, which grants the Noteholders an administrative expense claim for any diminution in the value of the Cash Collateral.

14.     The Noteholders are also adequately protected by virtue of the fact that the value of their collateral exceeds the amount of indebtedness.  Accordingly, the Noteholders are over-secured and adequately protected for the Debtors' proposed use of the Cash Collateral.

15.     The Debtors reserve the right to challenge the extent and validity of any liens asserted by the Noteholders.

16.     The immediate and temporary approval of the use of the Cash Collateral proposed is consistent with the requirements for: (i) maintaining the going concern value of the Debtors' business operations; (ii) the law under Bankruptcy Code § 363 (regarding the use of cash collateral) and § 361 (regarding adequate protection); and (iii) facilitating a successful reorganization of the Debtors' businesses under chapter 11.  The relief requested in this Motion is in the best interests of the Debtors, their estates and their creditors.

17.     The failure to authorize the immediate use of the Cash Collateral will result in a swift and significant deterioration of the Debtors' businesses, and will ultimately result in the cessation and liquidation of the Debtors' businesses due to the Noteholders' expressed intent to immediately foreclose on the Properties.

18.     The Debtors also request that this Court schedule a hearing for final approval of the use of the Cash Collateral, before expiration of any interim order on this Motion, on notice to creditors and parties in interest.

## IV.  AUTHORITY

19.     The Bankruptcy Code contemplates a debtor's use of collateral during the reorganization of its business. Sections §§ 102(1) and 363 of the Bankruptcy Code provide that cash collateral may be used upon notice and an opportunity for a hearing as appropriate in the particular circumstances.   Relief may be authorized without an actual hearing if there is insufficient time available and adequate protection has been provided. 11 U.S.C. § 363(e).  The combination of the Debtors' emergency needs to satisfy "first day" obligations and current operating needs, together with the provisions for adequate protection, are sufficient to authorize the interim use of the collateral proposed. *In re Cafeteria Operators, L.P.,* 299 B.R. 400, 410 (Bankr. N.D. Tex. 2003)*; In re Triplett, 87 B.R. 25* (Bankr, W.D. Tex. 1988).

20.     Section 361 of the Bankruptcy Code sets forth various types of adequate protection that the debtor may provide, including:

**(i)**     making periodic cash payments to the extent that the creditor suffers a decrease in the value of its interest in such property;

**(ii)**    granting replacement liens in collateral to compensate the creditor for any decrease in the value of the creditor's interest in such property; or

**(iii)**   granting other relief as will result in the realization of the indubitable equivalent of the creditor's interest in collateral,

11 U.S.C. § 361.

21.     The Debtors have satisfied the Noteholders' entitlement to adequate protection of its interests in the Debtors' assets because the Debtors have proposed to adequately protect the Noteholders from the Debtors' proposed use of the Cash Collateral by: (i) granting post-petition replacement liens on the assets with respect to which the Noteholders have validly perfected liens as of the Petition Date, and such replacement liens will have the same validity and priority as the liens held by the Noteholders as of the Petition Date; and (ii) affording the Noteholders additional protection pursuant to § 507(b) of the Bankruptcy Code.  In addition, the Debtors believe that the Noteholders are adequately protected by the fact that the value of the Noteholders' collateral exceeds the amount of indebtedness.

22.     Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct an expedited hearing on the Motion, and enter an interim order authorizing the Debtors to use the Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the estates. This relief will enable the Debtors to maintain ongoing operations of the Properties and avoid immediate and irreparable harm and prejudice to the estates and all parties in interest pending a final hearing on this Motion.

WHEREFORE, premises considered, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By: _/s/ William A. (Trey) Wood, III_
      William A. Wood, III
      Texas Bar No. 21916050
      Trey.Wood@bgllp.com
      711 Louisiana, Suite 2300
      Houston, Texas 77002
      Telephone: (713) 223-2300
      Facsimile:  (713) 221-1212

      Lauren C. Kessler
      Texas Bar No. 74024528
      Lauren.Kessler@bgllp.com
      1445 Ross Ave., Suite 3800
      Dallas, Texas 75202
      Telephone:  (214) 468-3800
      Facsimile:   (214) 468-3888

      PROPOSED ATTORNEYS FOR THE DEBTORS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing motion has been (i) electronically served on the parties receiving notice via the court's ECF noticing system; and (ii) via regular U.S. First Class Mail on the parties listed in the attached Service List, on this 6th day of January 2014.

By: _/s/ Lauren C. Kessler_
    Lauren C. Kessler

#4399636.1

-8-