IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| **ASR-8 CENTRE LP,** *et al.*[1] | § | Case No. 14-30174 |
| | § | |
| DEBTORS. | § | (*Jointly Administered*) |

### DEBTORS' RESPONSE TO SENIOR
### LENDERS' MOTION TO TERMINATE EXCLUSIVITY PERIOD

ASR-8 Centre LP ("NW Spectrum"), ASR-Fountainview Place LP ("Fountainview"), and ASR-Parkway One & Two, LP ("Parkway One & Two") (collectively, NW Spectrum, Fountainview, and Parkway One & Two shall be referred to herein as the "Debtors"), hereby object to the Senior Lenders Motion for an Order Terminating the Exclusivity Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof (the "Termination Motion").  In opposition thereof, the Debtors respectfully represent as follows:

#### I.     FACTUAL BACKGROUND

1.     On January 6, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as a debtors in possession.  No trustee or examiner has been appointed in this case.

2.     The Court entered an Order Granting the Debtors' Motion for Joint Administration on January 8, 2014.  [Docket No. 15].

---

[1] The Debtors in these chapter 11 cases are: (1) ASR-8 Centre LP; (2) ASR-Fountainview Place LP; and (3) ASR-Parkway One & Two, LP.

3. On February 28, 2014, the Debtors filed their Application to Employ Moody Law Group PLLC as Special Real Estate Counsel in connection with potential sales of the Debtors' properties. [Docket No. 71]. The Court entered its Order granting the Debtor's Application to Employ Moody Law Group on March 13, 2014. [Docket No. 79].

4. On March 3, 2014, NW Spectrum VPL LLC, Fountain View VPL LLC and Parkway I & II VPL, LLC (each a "Senior Lender" and collectively the "Senior Lenders") filed their Termination Motion. [Docket No. 74]. The hearing on the Senior Lenders' Termination Motion is currently set for March 28, 2014. [Docket No. 75].

5. On March 12, 2014, NW Spectrum filed its Motion to Sell a portion of its property, specifically, the undeveloped land adjacent to its retail strip ("NW Spectrum Sale Motion"). [Docket No. 78]. On March 18, 2014, Fountainview filed its Motion to Sell its two office buildings and the real property on which they are located ("Fountainview Sale Motion"). [Docket No.85]. The Court granted Fountainview's Motion for Emergency Hearing on the Fountainview Sale Motion and the hearing on Fountainview's Sale Motion is currently set for March 28, 2014. [Docket Nos. 87, 88].

## II.   ARGUMENTS AND AUTHORITY

6. Section 1121's provision for an exclusive period in which only the debtor may file a plan is illustrative of Congress' intent to facilitate the rehabilitation of debtors in chapter 11 cases. *Geriatrics Nursing Home, Inc. v. First Fidelity Bank, N.A.* (*In re Geriatrics Nursing Home, Inc.*), 187 B.R. 128, 131 (D.N.J. 1995). This exclusivity period "affords the debtor the opportunity to negotiate the settlement of its debts by proposing and soliciting support for its plan of reorganization without interference – in the form of competing plans – from its creditors or others in interest." *Id*. There is a recognized "need for debtors to remain in control, to some degree, or else debtors will avoid the reorganization provisions [in chapter 11] until it would be

-2-

too late for them to be an effective remedy." *In re Public Service Co.*, 88 B.R. 521, 535 (Bankr. D.N.H. 1988). As such, the exclusivity period "give[s] the debtor the ability to stabilize its operations and the opportunity to retain control over the reorganization process." *In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mi. 2012)(quoting *In re Clamp-All Corp.*, 233 B.R. 198, 207 (Bankr. D. Mass. 1999)); *In re Lehigh Valley*, 2000 WL 290187, *2 (Bankr. E.D. Pa. March 14, 2000). In addition, reasonable delay to foster a successful reorganization and attempt to realize the maximum value out of the debtor's estate, "even at the temporary expense of senior classes, is an integral part of the reorganization process in the federal courts." *In re Public Serv. Co.*, 88 B.R. at 536-37. The prohibition of competing plans during the "formative period of the chapter 11 case" is consistent with the Bankruptcy Code's "overarching goal of consensual reorganization." *In re Lehigh Valley*, 2000 WL 290187, at *3.

**A.     Senior Lenders Cannot Meet Their Heavy Burden**

7.     Due to the underlying policy behind section 1121, a party in interest which seeks to establish 'cause' to terminate the exclusivity period bears a heavy burden. *In re Geriatrics Nursing Home, Inc.*, 187 B.R. at 132; *In re Dow Corning Corp.*, 208 B.R. 661, 663 (Bankr. E.D. Mi. 1997) ("the standard of proof for [motions seeking to terminate or modify a debtor's exclusivity period] is a heavy one."); *In re Lehigh Valley*, 2000 WL 290187, at *2 ("when that change is a reduction in the statutory period, the burden is especially heavy"). Congress intended for the debtor to have the first and exclusive chance to propose and confirm a plan, therefore, cause to reduce the exclusivity period should only be found in extraordinary circumstances. *In re Energy Conversion Devices*, 474 B.R. at 508-09. A court should consider a request to terminate exclusivity seriously and termination 'should be granted neither routinely nor cavalierly." *In re Lichtin/Wade LLC*, 478 B.R. 204, 215 (Bankr. E.D.N.C. 2012); *In re Borders Group, Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011). Notably, in the twenty-two

(22) years since section 1129 was promulgated, there have been only two published cases in which the exclusivity period was terminated for cause. *In re Lehigh Valley Prof'l*, 2000 WL 290187, at *4; *In re Lichtin*, 478 at 215 ("In the almost three years since the court entered the order denying termination of exclusivity in *Fountainview Powerboat Indus.*, the court finds no additional published cases where the exclusivity period was terminated for cause"); *see also*, *In re Grand Traverse Dev. Co. LP*, 147 B.R. 418, 420 (Bankr. W.D. Mi. 1992)("The parties have submitted, and the court's research has uncovered, only two cases that permitted shortening the exclusivity period"); *In re Energy Conversion Devices¸* 747 B.R. at 508 (citing *In re Fountainview Powerboat Indus., Inc.*, 2009 WL 4738202, *7 (Bankr. E.D.N.C. Dec. 4, 2009)(finding only two published cases where courts have found 'cause' to reduce the exclusivity period)).

B.      The *In re Express One* Factors Weigh Against Termination of Exclusivity

8.      As the Senior Lenders mention in their Termination Motion, courts often consider nine factors in determining whether a debtor's exclusive period to file a plan should be terminated: (i) the size and complexity of the case; (ii) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization; (iii) the existence of good faith progress toward reorganization; (iv) the fact that the debtor is paying its bills as they become due; (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress in negotiations with creditors; (vii) the amount of time which has elapsed in the case; (viii) whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to the debtor's reorganization demands; and (ix) whether an unresolved contingency exists. *In re Express One Int'l*, 194 B.R. at 100; *In re Adelphia Comms. Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006). However, these cases arise in the context of a debtor's request to extend exclusivity; therefore, the factors articulated in these decisions have marginal utility here

since many of them assume the initial statutory period has been afforded. *In re Lehigh Valley Prof'l*, 2000 WL 290187, at *2; *accord, In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996) (competing motion to extend exclusivity and motion to terminate exclusivity, where court already granted the debtor two extensions of the exclusivity period); *In re Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mi. 1997) (court had already granted debtor two prior extensions of the exclusivity period). Regardless, on balance of the factors, there is not cause to terminate the Debtors' exclusivity period.

### a. Size and Complexity of the Cases

9. The Senior Lenders Termination Motion merely states that because these cases are "straightforward single asset real estate cases," they are "not overly complex, unique or large." *See* Termination Motion, ¶ 24(a). However, the Senior Lenders provide no facts or evidence besides the conclusory statement that these are single asset real estate cases. Although the Debtors' bankruptcy cases are all three single asset real estate cases, as determined in its Second Interim Order (I) Authorizing the Debtors to Use Cash Collateral of Existing Secured Lenders and (III) Granting Adequate Protection For Use Thereof [Docket No. 45] ("Interim Cash Collateral Order"), that does not per se mean this factor weights in favor of termination. *See In re Lichtin/Wade*, 478 B.R. at 210 (finding that this factor weighed in favor of the single asset real estate debtor's motion to extend exclusivity because the debtor had more than one secured claim, approximately seventy unsecured claims, and involved a substantial amount of money and litigated issues). Thus, the Senior Lenders mere statement that these cases are single asset real estate cases does not constitute evidence of the size or complexity of these bankruptcy proceedings and without evidence otherwise, this factor weight against termination.

b. **Necessity of Sufficient Time to Permit the Debtors to Negotiate a Plan and Prepare Adequate Information and Amount of Time Which Has Lapsed in the Cases**

10. The Debtors have been in bankruptcy for less than three months. The majority of that time has been spent satisfying the general requirements of a chapter 11 case, such as preparing and filing retention applications, schedules and statements of financial affairs, monthly operating reports, and other administrative tasks. Other courts considering this factor have authorized extensions of the debtor's exclusivity period where a debtor had periods from six months to two years to negotiate a plan. *In re Lichtin/Wade*, 478 B.R. at 211. Less than three months in bankruptcy is not sufficient time to justify termination of the exclusivity period, especially where the debtors have spent the majority of the time dealing with standard chapter 11 administrative tasks. *See In re Borders*, 460 B.R. at 826.

c. **Existence of Good Faith Progress Toward Reorganization and Progress in Negotiations with Creditors**

11. The Senior Lenders claim the Debtors' "actions both prior to and during these cases suggest that negotiations are unlikely to yield progress toward a plan of reorganization" and the "Debtors are not involved in any negotiations with creditors regarding a plan." *See* Termination Motion, ¶ 24(c), (d). However, the *Express One* factors only consider the debtor's actions during the bankruptcy proceed and the Senior Lenders provide no evidence in support of their allegations. The Debtors have been open and cooperative in providing the Senior Lenders the information requested, as available. A majority of the Senior Lenders' requests were made within the first two weeks of the Petition Date; therefore, the Debtors focused on completing their schedules, statement of financial affairs, and other administrative matters before they were able to complete the requests. As of March 6, 2014, the Debtors believe they have provided the

Senior Lenders all documents responsive to the Senior Lenders Requests.[2]  The Debtors continue to provide the Senior Lenders weekly reports reconciling their cash collateral budget and rent collections and are working to provide the Senior Lenders additional details on the transfers to insiders set out in the Debtors' Statement of Financial Affairs.  The Debtors have been cooperative and are willing to work with the Senior Lenders and other creditors in formulating a plan of reorganization or sale of the properties; therefore, this factor favors extending exclusivity.  *See In re Borders*, 460 B.R. at 825-26.

### d. Debtors are Paying Bills as they Come Due

12. The Senior Lenders do not allege in their Termination Motion that the Debtors are not paying their bills as they come due.  In fact, the Debtors are paying their bills as they come due as well as making adequate protection payments to the Senior Lenders.  This factor weighs in favor of extending exclusivity.

### e. Debtors Demonstrated Reasonable Prospects for Filing Viable Plan

13. The Senior Lenders do not allege and do not provide any evidence that the Debtors do not have reasonable prospects for filing a viable plan.  Instead, the Senior Lenders argue that an auction and sale of the Debtors' property is superior to any reorganization the Debtors may suggest.  This is not sufficient to demonstrate cause.  The issue is "not whether some other plan may exist which provides greater recovery; the issue is whether debtor has been diligent in its attempts to reorganize." *In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996); *see also, In re Geriatrics Nursing Home*, 187 B.R. at 134 ("The [c]ourt is not satisfied that statements made by creditors and parties in interest that they were prepared to offer more favorable plans if the court were to terminate the exclusivity period constitutes sufficient

---

[2] The Senior Lenders reference certain ARGUS cash flow files that the Debtors did not provide because the Debtors do not have any documents responsive to that request.  Debtors still assert they do not have any such ARGUS files.

cause to cut short the debtor's window of opportunity opened by Congress 11 U.S.C. § 1121(b) and (c)"). There is no evidence that the Debtors are unable to file a viable plan or that a sale of the Debtors' properties is the only viable plan; therefore, this factor weight in favor of extending exclusivity.

### f. Debtors Are Not Seeking Exclusivity to Pressure Creditors to Submit to Debtors' Reorganization Demands

14. Debtors are not seeking extension of exclusivity, so this factor does not apply. Further, there is no evidence that the Debtors have engaged in "stall tactics" or that they oppose the Senior Lenders' Termination Motion for the purpose of pressuring creditors to submit to their proposed plan. Therefore, even if applicable, this factor weighs in favor of extending exclusivity. *See In re Lichtin/Wade*, 478 B.R. at 213-14.

### g. Unresolved Contingencies Exists

15. Once again the Senior Lenders provide no evidence for their conclusory statement that no unresolved contingencies that require delay of the proposal of a plan exist. *See* Termination Motion, ¶ 24(f). The Debtors are still evaluating whether a sale or reorganization would be in the best interest of the estates and their creditors; therefore, there is an unresolved contingency that relates to the Debtors' plan proposal. As such, this factor weighs in favor of extending the exclusivity period.

### C. Termination of Exclusivity is Not in the Best Interest of the Debtors, their Estates, and Their Creditors

16. A primary consideration in determining whether to terminate a debtor's exclusivity is whether termination will facilitate moving the bankruptcy case forward. *In re Borders*, 460 B.R. at 827; *In re Dow Corning*, 208 B.R. at 670. The Debtors are clearly not delaying the bankruptcy proceedings, especially since neither initial exclusivity period nor the single asset real estate case deadline for filing a plan have expired. The idea that a creditor's

unhappiness, without more, is sufficient 'cause' to terminate the exclusivity period has been "judicially rejected." *See In re Adelphia Comm. Corp.*, 336 B.R. 610, 676 (Bankr. S.D.N.Y. 2006).

17. In addition, where the creditors intend to liquidate a debtor instead of negotiating an equitable plan of reorganization, an extension of exclusivity is consistent with the purpose of section 1121. *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 411 (E.D.N.Y. 1989). Here, the Senior Lenders seek to terminate exclusivity in order to liquidate the Debtors' properties through an auction and sale as opposed to allowing the Debtors to formulate and negotiate a potential plan of reorganization. Therefore, the Senior Lenders have not demonstrated sufficient cause to terminate the Debtors' statutory exclusivity period.

18. Further, allowing the Debtors the full statutory exclusivity period will not prejudice the Senior Lenders in any way. The Senior Lenders' interests are currently protected because the Debtors continue to pay monthly adequate protection payments to the Senior Lenders pursuant to the interim cash collateral order . As such, the Senior Lenders are protected during the exclusivity period and the Debtors should have a chance to reorganize in a way that the Debtors' believe will be in the best interest of the Debtors, their estates, and their creditors. *See, e.g., In re Lichtin/Wade*, 478 B.R. at 216 (denying the secured creditor's motion to terminate exclusivity and granting the single asset real estate debtor's motion to extend exclusivity because the secured creditor was adequately protected and did not establish sufficient cause).

19. The Senior Lenders want a sale of all the properties because they believe it would be in their best interest. However, the Debtors are evaluating both a sale and a restructure to determine which approach is in the best interest of <u>all</u> the Debtors' creditors, not just the secured lenders. At this early stage in the case, it cannot conclusively be determined that a liquidation

will provide the estate and creditors the highest recovery. The underlying purpose of chapter 11 is to give the debtor some time to assess the status of its operations and rehabilitate the business through a consensual plan. The Senior Lenders, through their Termination Motion, are essentially seeking to continue what they started pre-petition – foreclose on the properties as quickly as possible, regardless of any equity that exists or potential recovery to other creditors. The Debtors filed this bankruptcy to preserve the equity in their properties and institute a plan that would provide the best recovery for all its creditors, not just the senior lenders. Terminating exclusivity, as the Senior Lenders suggest, would significantly impair and possibly even prevent the Debtors from completing their analysis and determination of whether a plan of reorganization or sale would be in the best interests of the estates and all the Debtors' creditors. "Motions that would bring on intolerable consequences for an estate should not be used as a tactic to augment a particular constituency's recovery." *In re Adelphia Comm.*, 336 B.R. at 678. As such, the Senior Lenders' Termination Motion should be denied and the Debtors should be allowed the full statutory period to exclusively propose a plan.

### III.   CONCLUSION

20.   This Court should deny the Senior Lenders' requested relief for termination of the Debtors' exclusivity period because there is no cause. It is in the best interest of the Debtors and all the Debtors' creditors if the Senior Lenders' Termination Motion is denied and the Debtors are permitted to continue to work toward a consensual plan.

WHEREFORE, the Debtors respectfully request this Court deny the Senior Lenders' Termination Motion and grant the Debtors such other relief as is just and equitable.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: */s/ William A. (Trey) Wood, III*
William A. Wood, III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

Lauren C. Kessler
Texas Bar No. 74024528
Lauren.Kessler@bgllp.com
1445 Ross Ave., Suite 3800
Dallas, Texas 75202
Telephone: (214) 468-3800
Facsimile: (214) 468-3888

**ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2014 a true and correct copy of the above and foregoing Motion has been served electronically on the parties receiving notice via the court's ECF noticing system and via electronic mail on the following:

Daniel B. Prieto
JONES DAY
2727 N. Harwood
Dallas, TX 75201
dbprieto@jonesday.com

Paul M. Green
JONES DAY
717 Texas Avenue, Suite 3300
Houston, TX 77002
pmgreen@jonesday.com

By: */s/ Lauren C. Kessler*
Lauren C. Kessler

#4507913.1